Court of Appeals
Fourth Court of Appeals District of Texas




## OPINION

No. 04-11-00045-CV

**RCI ENTERTAINMENT (SAN ANTONIO), INC.** d/b/a XTC Cabaret; and
Players Club, LLC d/b/a Players Club a/k/a Paradise Gentlemen's Club;
Appellants

v.

**CITY OF SAN ANTONIO**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-00195
Honorable Richard Price, Judge Presiding[1]

Opinion by:   Sandee Bryan Marion, Justice

Sitting:   Sandee Bryan Marion, Justice
         Phylis J. Speedlin, Justice
         Marialyn Barnard, Justice

Delivered and Filed:   February 8, 2012

AFFIRMED IN PART; REVERSED IN PART AND REMANDED

      This is an appeal from a permanent injunction and declaratory judgment adverse to the

appellants.   We conclude the ordinance is not preempted by or inconsistent with the Texas Penal

Code or the Texas Business and Commerce Code, and is not an unconstitutional restraint on

freedom of expression.   However, because the injunction is overly broad in scope, we reverse in

part and remand.

---

[1] The Honorable Michael P. Peden, now retired, presided over the hearing and signed the judgment at issue in this appeal.

## THE ORDINANCE

In 2005, the City of San Antonio ("the City") adopted an ordinance, later codified in the City's Code of Ordinances, that prohibits nudity and semi-nudity in public places and requires permits for "human display establishments." The ordinance makes it unlawful

> (a)  for an individual to intentionally or knowingly appear in a state of nudity in a public place.
>
> . . .
>
> (c)  for an individual, person, corporation, or association that manages, or operates a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of nudity.
>
> . . .
>
> (e)  for an owner-operator of a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of nudity.

SAN ANTONIO, TEX., CODE § 21-205(a), (c), (e) (2005).[2]

> The ordinance defines "human display establishment" as
>
> those premises, including those subject to regulation under Chapters 54 or 243 of the Texas Local Government Code, as amended, wherein there is conducted the business of furnishing, providing or procuring dancers, entertainers, or models who appear live at said premises in a state of nudity or semi-nudity, or while performing specified sexual activities.
>
> . . . .

*Id.* § 21-200.

---

[2] The ordinance also makes it "unlawful for an individual to intentionally or knowingly appear in a state of semi-nudity in a public place." SAN ANTONIO, TEX., CODE § 21-205(b). The ordinance also makes it unlawful "for an individual, person, corporation, or association that manages, or operates a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of semi-nudity" and "for an owner-operator of a human display establishment to intentionally or knowingly allow an individual to appear on the premises of said establishment in a state of semi-nudity." *Id.* § 21-205(d),(f). These subsections are not at issue in this appeal.

The ordinance defines "nude or nudity or state of nudity" as "a state of undress which fails to fully and opaquely cover the anus, crevice of the buttocks, genitals, pubic region, or perineum anal region, regardless of whether the nipple and areola of the human breast are exposed." *Id.*

Any violation of the ordinance is punishable as a Class C misdemeanor with a fine not to exceed $2,000.00. *Id.* § 21-208(a). The ordinance allows the City to seek injunctive relief to enjoin violation of the ordinance. *Id.* § 21-213. Finally, an exception to the prohibition contained in section 21-205 exists for a "person engaged in expressing a matter of serious literary, artistic, scientific, political, or social value." *Id.* § 21-207(c)(1).

## BACKGROUND

Appellant RCI Entertainment (San Antonio), Inc. d/b/a XTC Cabaret ("RCI") operates a cabaret-type establishment that offers live nude entertainment. Appellant Players Club, LLC a/k/a Players Club a/k/a Paradise Gentlemen's Club ("Players") also operates a cabaret-type establishment that offers live nude entertainment. Both companies have operated their businesses within San Antonio, Texas since 1999 and 2002 respectively.

One evening in December 2009, the San Antonio Police Department appeared at the appellants' businesses to conduct "inspections." At both establishments, police arrested entertainers for appearing in a state of nudity in a public place and managers for allowing the entertainers to appear in a state of nudity in a human display establishment. In separate lawsuits, which were later consolidated, appellants sued the City seeking declaratory and injunctive relief on the grounds that the ordinance was preempted by the Texas Penal Code and the Texas Business and Commerce Code. Alternatively, appellants sought a declaration that the ordinance was unconstitutional on the grounds that the ordinance imposed an unreasonable and

unnecessary limitation on expression and constitutionally-protected activities, thereby constituting a prior restraint and "chilling effect" on protected speech. The City counterclaimed, in both suits, seeking to permanently enjoin the appellants from further violations of subsections (a), (c), and (e) of section 21-205 of the ordinance.

Following a bench trial, the trial court rendered judgment in favor of the City and denied all claims for relief asserted by the appellants. Appellants are permanently enjoined as follows:

> [Appellants] and their respective agents, servants, employees, representatives, contractors, and those in active concert or participation with it or them are restrained from violating Article IX, Section 21-205 (a), (c), and (e) of the City of San Antonio Code of Ordinances [specifically restrained from allowing individuals to appear in a state of nudity at d/b/a The Players Club a/k/a Paradise Gentlemen's Club and RCI Entertainment (San Antonio), Inc. d/b/a XTC Cabaret].

The judgment provided that the restraint was binding on RCI and Players "and upon those persons described in Section 21-205(c) and (e) in active concert or participation with it or them who receive actual notice of the order by personal service or otherwise."

Appellants' motion for new trial was overruled by operation of law, and this appeal ensued.

## PREEMPTION

Appellants first argue the challenged portion of the ordinance (subsections (a), (c), and (e) of section 21-205), is preempted by the Texas Penal Code and the Texas Local Government Code as a matter of law and, therefore, void.

When reviewing the validity of a city ordinance, an appellate court is to presume the ordinance is valid. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982). The burden of showing that a city ordinance is invalid rests on the party attacking it. Home-rule cities, such as San Antonio, have full power of self-government and authority to do anything the

Legislature could have authorized them to do. TEX. CONST. art. XI, § 5. Therefore, courts now determine whether the Legislature has limited the power of a home-rule city, not whether it has made specific grants of authority. *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (orig. proceeding) (per curiam); *see also Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993); *State v. Chacon*, 273 S.W.3d 375, 378 (Tex. App.—San Antonio 2008, no pet.).

On appeal, appellants argue the Texas Legislature has clearly indicated its intent to limit the power of cities to regulate certain behavior by the enactment of Penal Code section 1.08, which provides that "[n]o governmental subdivision or agency may enact or enforce a law that makes any conduct covered by this code an offense subject to a criminal penalty." TEX. PENAL CODE ANN. § 1.08 (West 2011). "In accordance with this provision, a city cannot enact an ordinance proscribing the same conduct as is proscribed by the Penal Code." *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 17 (Tex. 1990). However, section 1.08 does not place any greater restriction on a home-rule city than that which existed prior to its enactment by virtue of article XI, section 5 of the Texas Constitution. *Id.* at 19. Under article XI, section 5 of the Texas Constitution, home-rule cities have broad discretionary powers provided that no ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State . . . ." TEX. CONST. art. XI, § 5(a).

If the Legislature decides to preempt a subject matter normally within a home-rule city's broad powers, it must do so with "unmistakable clarity." *Dallas Merchant's*, 852 S.W.2d at 491; *Chacon*, 273 S.W.3d at 378. A city ordinance that attempts to regulate a subject matter a state statute preempts is unenforceable to the extent it conflicts with the state statute. *In re Sanchez*, 81 S.W.3d at 796; *Dallas Merchant's*, 852 S.W.2d at 491. "Thus, the mere fact that the

legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted." *Responsible Dog Owners*, 794 S.W.2d at 19. When there is no conflict between a state law and a city ordinance, the ordinance is not void. *Id.* Accordingly, courts will not hold a state law and a city ordinance repugnant to each other if they can reach a reasonable construction leaving both in effect. *In re Sanchez*, 81 S.W.3d at 796; *Dallas Merchant's*, 852 S.W.2d at 491. If there is no conflict, the ordinance is not void. *Chacon*, 273 S.W.3d at 378.

## A.     Does the Texas Penal Code Preempt the Ordinance?

Appellants contend the City's ordinance is an attempt to regulate the same conduct as the Penal Code, *i.e.*, under what circumstances it is illegal to appear in public in a state of nudity. We first must determine whether the City is attempting to regulate the same conduct as the State. If the ordinance is an attempt to regulate the same conduct governed by the Penal Code, then we next must decide whether the ordinance conflicts with the applicable Penal Code sections.

The Penal Code sections at issue here criminalize public lewdness, indecent exposure, disorderly conduct, and public indecency. Under Penal Code section 21.07, a person commits the offense of public lewdness "if he knowingly engages in any of the following acts in a public place or, if not in a public place, he is reckless about whether another is present who will be offended or alarmed by his:"

> (1) act of sexual intercourse;
> (2) act of deviate sexual intercourse;
> (3) act of sexual contact; or
> (4) act involving contact between the person's mouth or genitals and the anus or genitals of an animal or fowl.

TEX. PENAL CODE § 21.07(a). An offense under this section is a Class A misdemeanor. *Id.* § 21.07(b).

Under Penal Code section 21.08, a person commits the offense of indecent exposure "if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." *Id.* § 21.08(a). An offense under this section is a Class B misdemeanor. *Id.* § 21.08(b).

Penal Code section 42.01 provides that a person commits the offense of disorderly conduct "if he intentionally or knowingly . . . exposes his anus or genitals in a public place and is reckless about whether another may be present who will be offended or alarmed by his act . . . ." *Id.* § 42.01(a)(10). With exceptions not pertinent here, an offense under this section is a Class C misdemeanor. *Id.* § 42.01(d). Finally, Penal Code section 43.23 provides as follows:

> A person commits [the offense of public indecency] if, knowing its content and character:
> (1) promotes or possesses with intent to promote any obscene material or obscene device; or
> (2) produces, presents, or directs an obscene performance or participates in a portion thereof that is obscene or that contributes to its obscenity.

*Id.* § 43.23(c)(2). With exceptions not pertinent here, an offense under subsection (a) is a state jail felony and an offense under subsection (c) is a Class A misdemeanor. *Id.*

None of these sections contain an explicit expression of the Legislature's intent that the Penal Code exclusively governs the criminalization of an intentional or knowing appearance in a state of nudity in a public place.[3] Appellants argue that the Penal Code implicitly allows nudity

---

[3] *Compare*, the Texas Alcoholic Beverage Code provides as follows:

> (a) Except as is expressly authorized by this code, a regulation, charter, or ordinance promulgated by a governmental entity of this state may not impose stricter standards on premises or businesses required to have a license or permit under this code than are imposed on similar premises or businesses that are not required to have such a license or permit.

> (b) It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code.

except under limited circumstances. We disagree with appellants' argument. "Silence on the part of the state does not give rise to an inference that the state has prohibited localities from enacting ordinances further regulating an area." *J&B Entm't, Inc. v. City of Jackson, Miss.*, 152 F.3d 362, 379 (5th Cir. 1998) (concluding that state's ban of lewd public nudity and silence on subject of nonlewd public nudity did not give rise to an inference that the state expressed an intent to allow nonlewd public nudity). Ordinances that supplement or address a different subject matter than a state statute are not inconsistent with the statute unless the state has explicitly provided that localities cannot further regulate a given area. *See In re Sanchez*, 81 S.W.3d at 796.

We conclude the ordinance is not preempted by Penal Code sections 21.07, 21.08, or 43.23 because these sections are not directed at the same conduct as the ordinance. Penal Code section 21.07 proscribes sexual or deviate sexual intercourse and certain forms of sexual contact in a public place. Penal Code section 21.08 prohibits a person from exposing him or herself with the intention of arousing or gratifying sexual desire, and with reckless disregard for whether another person may be present who will be offended or alarmed by his or her act of exposure. Penal Code section 43.23 proscribes a "performance" that involves "obscenity." Thus, each of these Penal Code sections is aimed at conduct that contains a sexual or obscene element. The ordinance, however, is directed only at the act of appearing in a public place in a state of nudity. Therefore, because the ordinance does not regulate the same conduct as Penal Code sections 21.07, 21.08, or 43.23; the ordinance is not preempted by these sections.

---

TEX. ALCO. BEV. CODE ANN. § 109.57(a), (b) (West 2007); *see Dallas Merchant's*, 852 S.W.2d at 491 ("The Legislature's intent is clearly expressed in section 109.57(b) of the TABC—the regulation of alcoholic beverages is exclusively governed by the provisions of the TABC unless otherwise provided. . . . . Section 109.57 clearly preempts an ordinance of a home-rule city that regulates where alcoholic beverages are sold under most circumstances.").

We acknowledge, however, that a comparison between Penal Code section 42.01 and the ordinance is a closer call because there is some overlap. Penal Code section 42.01 prohibits a person from exposing him or herself with reckless disregard for whether another person may be present who will be offended or alarmed by his or her act of exposure. The ordinance is directed at the act of appearing in a public place in a state of nudity, regardless of whether anyone else may be present to witness the nudity. Because of this overlap, we will assume the ordinance does attempt to regulate the same conduct as Penal Code section 42.01. However, we conclude the ordinance here is similar to the ordinance at issue in *Responsible Dog Owners* in that the City's ordinance represents a "comprehensive attempt to address" a specific type of public conduct—appearing in a state of nudity. By contrast, Penal Code section 42.01 is more limited because it requires reckless disregard for whether another person may be present who will be offended or alarmed by the act of nudity. Although there is a small area of overlap in the provisions of the narrow Penal Code section and the broader ordinance, we conclude this overlap does not render the ordinance inconsistent with the Penal Code. *See Responsible Dog Owners*, 794 S.W.2d at 19; *J&B Entm't, Inc.*, 152 F.3d at 380.

**B.      Does the Texas Business and Commerce Code Preempt the Ordinance?**

Appellants also contend the Legislature recognized nude entertainment as lawful conduct when it enacted Business and Commerce Code section 102.052, which imposes a fee "on a sexually oriented business in an amount equal to $5 for each entry by each customer admitted to the business." *See* TEX. BUS. & COM. CODE ANN. § 102.052(a) (West Supp. 2011). Appellants rely on *City of Fort Worth v. McDonald*, 293 S.W.2d 256 (Tex. Civ. App.—Fort Worth 1956, writ ref'd n.r.e.) to argue that the City's ordinance banning live nude entertainment deprives the State of this fee by making illegal that which is legal and taxable under the laws of Texas.

In *McDonald*, the City of Fort Worth enacted an ordinance that defined marble boards as a nuisance per se; made their ownership, operation, or exhibition a misdemeanor; prescribed a fine up to $200 for each day of violation; and provided for summary seizure by any police officer. *Id.* at 258. A state statute at the time levied an occupation tax on owners of "skill or pleasure coin-operated machines," which included marble machines, marble table machines, and marble shooting machines. The court of appeals held that merely because a city has the power by charter and statute to define and prevent a nuisance does not mean a city "may 'by an arbitrary standard, declare that to be a nuisance which is not so in fact.'" *Id.* The court concluded a city has no right to supersede a revenue statute by declaration that a licensed business is a nuisance. *Id.* However, the court noted no general statute allowed the Fort Worth City Council to "prevent or prohibit" marble boards. *Id.*

Here, Texas Local Government Code section 243.001 specifically grants to cities "authority . . . to regulate sexually oriented businesses with regard to any matters." TEX. LOC. GOV'T CODE ANN. § 243.001(b) (West 2005). Therefore, we conclude Business and Commerce Code section 102.052 does not preempt the ordinance.

## CONSTITUTIONAL RIGHTS

Finally, appellants assert the ordinance violates article 1, section 8, of the Texas Constitution, which provides that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. art. I, § 8. Appellants argue the Texas Constitution affords them greater protection than the First Amendment to the U.S. Constitution, which provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. CONST. amend. I.

The difference between the federal constitution and our state constitution is that the First Amendment to the U.S. Constitution represents a restriction on governmental interference with speech, while "Texans [in drafting our state constitution] chose from the beginning to assure the liberties for which they were struggling with a specific guarantee of an affirmative right to speak." *Davenport v. Garcia*, 834 S.W.2d 4, 7-8 (Tex. 1992). Over the years, through various constitutional redrafts and amendments, and even "amidst intense public debate over secession and reconstruction," Texans continued to include "an expansive freedom of expression clause" and reject the "more narrow protections" of the federal constitution, indicating "a desire in Texas to ensure broad liberty of speech." *Id.* at 8. "Consistent with this history, the Texas Supreme Court has recognized that "in some aspects our free speech provision is broader than the First Amendment [to the U.S. Constitution]." *Id.* Under this broader guarantee, it has been and remains the preference of the Texas Supreme Court "to sanction a speaker after, rather than before, the speech occurs" because this "comports with article one, section eight of the Texas Constitution, which both grants an affirmative right to 'speak . . . on any subject,' but also holds the speaker 'responsible for the abuse of that privilege.'" *Id.* at 9.

However, the scope of this greater protection has been questioned. *See Tex. Dep't of Tranp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003); *Operation Rescue–Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 558–60 (Tex. 1998). The mere assertion that freedom of expression protections are broader under the Texas Constitution than under the federal constitution "means nothing." *Bentley v. Bunton*, 94 S.W.3d 561, 578 (Tex. 2002). "[T]o assume automatically 'that the state constitutional provision must be more protective than its federal counterpart illegitimizes any effort to determine state constitutional standards.' If the Texas Constitution is more protective of a particular type of speech, 'it must be

because of the text, history, and purpose of the provision.'" *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434 (Tex. 1998) (quoting *Operation Rescue*, 975 S.W.2d at 559) (internal citations omitted).  The *Benton* Court noted that the cases in which the Texas Supreme Court has held the Texas Constitution creates a higher standard than the First Amendment involved prior restraints in the form of court orders prohibiting or restricting speech.  *Id.*

On appeal, appellants argue we must scrutinize the ordinance under the higher standard of the Texas Constitution.  However, because no Texas court has addressed the specific complaints raised in this appeal regarding a city-wide ban on nudity, we look to federal cases for guidance on whether the ordinance is content-based or content-neutral.[4]

## A.      Is the Ordinance Content-Based or Content-Neutral?

On its face, the ordinance does not ban expression in the form of nude dancing.  Instead, the ordinance is a general prohibition against public nudity.  Thus, the ordinance regulates conduct and not the content of anyone's speech.  *See Erie v. Pap's A.M.*, 529 U.S. 277, 284, 290 (2000) (plurality) (holding same regarding ordinance that made it an offense for a "person who knowingly or intentionally, in a public place . . . appears in a state of nudity . . . ."); *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566-69 (1991) (plurality) (holding same).  Because the essence of appellants' argument on appeal is that the ordinance prohibits conduct—nude dancing—precisely because of its communicative attributes, we will begin our analysis with a consideration of whether the ordinance is content-neutral or content-based.  Appellants assert the

---

[4] Other Texas courts have addressed ordinances aimed, at least in part, at human display establishments, but have not considered the same issue as in this appeal. *See, e.g. Combs v. Tex. Entm't Ass'n*, 347 S.W.3d 277, 286 (Tex. 2011) (concluding that Texas statute requiring $5 fee for each customer admitted to a business offering live nude entertainment and allowing consumption of alcohol was not aimed at any expressive content of the nude dancing); *Kaczmarek v. State*, 986 S.W.2d 287, 290 (Tex. App.—Waco 1999, no pet.) (considering whether ordinance that required a permit to operate a sexually oriented business granted City of Houston "unbridled discretion" to grant or deny the permit, thereby allowing the city to place a prior restraint upon the expressive conduct found in the dancing); *2300, Inc. v. City of Arlington*, 888 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no writ) (considering constitutionality of "no touch" provision in city ordinance that regulated adult cabarets).

ordinance is content-based for two reasons: (1) only dancers, managers, and owners of human display establishments—as opposed to anyone else appearing in a state of public nudity—are subject to criminal and civil liability under the ordinance, and (2) the ordinance allows an exception to liability based on the content of the speech for any "person engaged in expressing a matter of serious literary, artistic, scientific, political, or social value." SAN ANTONIO, TEX., CODE § 21-207(c)(1).

The *Erie* Court rejected an argument similar to the first argument made by appellants here. In *Erie*, the respondent argued the ordinance was "aimed" at suppressing expression through a ban on nude dancing. 529 U.S. at 284. The respondent supported this argument by pointing to statements made by the city attorney that the public nudity ban was not intended to apply to "legitimate" theater productions. The Court concluded this was "really an argument that the city council also had an illicit motive in enacting the ordinance." *Id.* The Court rejected the argument noting it would "not strike down an otherwise constitutional statute on the basis of an alleged illicit motive." *Id.* Likewise, here, we will not strike down an ordinance on the grounds that only human displays establishments are targeted by the ordinance. Also, we do not agree that only dancers, managers, and owners of human display establishments are targeted by the ordinance. The ordinance makes it unlawful "for an individual to intentionally or knowingly appear in a state of nudity" in "all locations owned or open to the general public" and is not limited only to human display establishments. SAN ANTONIO, TEX., CODE § 21-200.

We also note that the ordinance was enacted pursuant to Texas Local Government Code section 243.001, which expresses the Texas Legislature's concern "that the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the

growth of criminal activity." TEX. LOC. GOV'T CODE § 243.001(a). We believe the ordinance is not aimed at any expressive content of appearing nude but at the secondary effects of appearing nude in public. *See Combs v. Tex. Entm't Ass'n*, 347 S.W.3d 277, 286 (Tex. 2011) (rejecting similar argument made by operator of sexually oriented business in challenge to $5.00 fee under Business and Commerce Code section 102.052).

Appellants also argue the ordinance is content-based because it provides an exception from the general ban on nudity based entirely on the content of the message conveyed by the dancers. Appellants point to the exception contained within the ordinance that exists for a "person engaged in expressing a matter of serious literary, artistic, scientific, political, or social value." SAN ANTONIO, TEX., CODE § 21-207(c)(1). According to appellants, the inclusion of this exception shows the City values some forms of speech over other forms of speech. The premise of this argument is that the ordinance is content-based because it distinguishes favored speech (with "serious literary, artistic, scientific, political, or social value") from disfavored speech (appearing in a state of nudity) on the basis of the ideas or views expressed.

Regulations that "by their terms distinguish favored speech from disfavored speech on the basis of ideas or views expressed are content-based." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 643 (1994). Thus, a rule that is applied because of disagreement with a message presented or a rule that has a substantial risk of eliminating certain ideas or viewpoints from the public dialogue is content-based. *See id.* at 642. If, on the other hand, the regulation is justified without reference to the content of the speech or serves purposes unrelated to the content, it is a content-neutral regulation, even if it has an incidental effect on some speakers or messages but not others. *Horton v. City of Houston*, 179 F.3d 188, 193 (5th Cir. 1999), *cert. denied*, 528 U.S. 1021 (1999).

Sufficient government interests justifying content-neutral regulations include "preventing harmful secondary effects," *Erie*, 529 U.S. at 293, and "protecting morals and public order," *Barnes*, 501 U.S. at 569, both classic expressions of state police powers. While "the messages conveyed by erotic dancing and theatrical nudity may be similar, the social by-products of each medium may be considerably different." *See Boyd v. County of Henrico*, 592 S.E.2d 768, 776 (Va. Ct. App. 2004). Within the "limited field of regulations on public exhibitions of adult entertainment," therefore, the presence of negative secondary effects permits public nudity regulations to be treated "as content-neutral and so subject only to intermediate scrutiny." *Id.* (internal citation omitted). We therefore conclude the exception contained in the ordinance does nothing more than ensure that the ordinance incidentally restricts the least amount of expressive conduct, and thus, protects the ordinance against an overbreath challenge.

We hold that the ordinance's public nudity ban should be "properly evaluated as a content-neutral restriction because the interest in combating the secondary effects associated with [sexually oriented businesses] is unrelated to the suppression of the erotic message conveyed by nude dancing." *Erie*, 529 U.S. at 296; *Boyd*, 592 S.E.2d at 776. Because we believe the ordinance is content-neutral, we also conclude the ordinance is not entitled to the broader free speech protections granted under the Texas Constitution. *See also Kaczmarek v. State*, 986 S.W.2d 287, 291 (Tex. App.—Waco 1999, no pet.) (holding that broader Texas free speech protection does not extend to topless/exotic dancing); *2300, Inc. v. City of Arlington*, 888 S.W.2d 123, 127 (Tex. App.—Fort Worth 1994, no writ) (holding same). Accordingly, we apply the same intermediate scrutiny analysis under the Texas Constitution as under the First Amendment to the U.S. Constitution, and refer to federal cases analyzing the First Amendment to the U.S. Constitution for guidance.

**B.     Intermediate Scrutiny**

A content-neutral restriction on speech withstands intermediate scrutiny if it (i) falls within "the constitutional power" of the City, (ii) furthers an "important or substantial government interest," (iii) furthers that interest in a manner "unrelated to the suppression of free expression," and (iv) imposes no greater incidental restriction on protected speech "than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). Appellants do not contest the ordinance falls within the City's constitutional power. As discussed above, the ordinance furthers an "important or substantial government interest," and we believe the ordinance furthers that interest in a manner unrelated to the suppression of free expression. As to the fourth and final *O'Brien* requirement, the court in *Boyd* phrased the issue as follows:

> The only constitutional right here (albeit one "marginally" within the "outer perimeters" of the First Amendment) is the erotic message implicit in nude or semi-nude dancing. There is no general right to take one's clothes off in public. Nor is there a constitutional right to wear pasties and G-strings rather than the lingerie-like tops and bottoms required by the Henrico [County] ordinance. Thus, we cannot ask whether requiring slightly more clothes restricts the erotic dancer's right to be less clothed. "Being 'in a state of nudity,'" after all, "is not an inherently expressive condition." Instead, we must ask whether the ordinance unduly burdens the dancer's ability to express her erotic message by requiring her to cover up slightly more of her body with slightly more fabric.

*Boyd*, 592 S.E.2d at 777-78 (internal citations omitted).

We agree with the *Boyd* court that being in a state of nudity is not an inherently expressive condition. "A flasher in a public mall may genuinely intend to communicate a message—whether erotic, neurotic, or both. But the communicative element in his conduct should receive no constitutional protection." *Id.* at 775. Similarly, going from complete nudity to being partly clothed involves a de minimis impact on the ability of a dancer to express eroticism. *See Erie*, 529 U.S. at 294; *see also Boyd*, 592 S.E.2d at 779 ("The dancer's erotic

message still reaches its intended audience. The additional clothing just "makes the message slightly less graphic.").[5]   Therefore, we conclude the ordinance imposes no greater incidental restriction on protected speech than is essential to the furtherance of the governmental interest at which the ordinance is aimed.  Accordingly, the ordinance withstands intermediate scrutiny.

## C.      Prior Restraint of Speech

Appellants also assert the ordinance has a chilling effect on speech by impeding an individual's desire to express herself through dance and by discouraging a patron's right to receive the message.  However, as we concluded above, this is a content-neutral ordinance.  "By its terms, the ordinance regulates conduct alone."  *See Erie*, 529 U.S. at 290.  Consequently, the ordinance is not an unconstitutional prior restraint on speech.

## PERMANENT INJUNCTION

Finally, appellants challenge the trial court's injunction on a variety of grounds. Appellants' first complaint is directed toward the following trial court findings of fact:

> 5. The ordinance prohibits an individual from intentionally or knowingly appearing in a state of nudity or semi-nudity in a public place and prohibits a manager, operator or owner-operator of a Human Display Establishment from intentionally or knowingly allowing an individual to appear on the premises of the establishment in a state of nudity or semi-nudity.
>
> 6. RCI/Players' establishments offer live nude entertainment.

On appeal, appellants contend that although the trial court found that appellants' businesses provided live nude entertainment, the court did not specifically find or conclude that offering live nude entertainment violated subsections (a), (c), or (e) of the ordinance. Therefore,

---

[5] The *Boyd* court noted, "Along these same lines, we do not accept appellants' unstated assumption that the more graphic the dancer's display of nudity the more erotic her message necessarily becomes. While that may be true at the extremes (like the contrast between a dancer in a snow skiing suit and one completely naked), it is not true at the margins (like the contrast between a dancer wearing almost nothing and one wearing slightly more than almost nothing)."  592 S.E.2d at 779.

appellants contend the City failed to show the existence of a wrongful act, a prerequisite to obtaining a permanent injunction. Appellants also assert the trial court was required to find, but did not find, that their conduct was illegal.

The ordinance provides for criminal prosecution for any violation. SAN ANTONIO, TEX., CODE § 21-208 ("Penalties and enforcement"). In addition to or in lieu of this remedy, the ordinance allows the City to seek injunctive relief to enjoin violation of the ordinance. *Id.* § 21-213 ("Authority to file suit"). The court found, and appellants do not dispute, that their establishments "offer live *nude*" entertainment. (Emphasis added.) Appearing in nude in a public place or allowing someone to appear on the premises of a human display establishment in a state of nudity violates the ordinance. Proof of violation of the ordinance "makes out a sufficient case for injunctive relief." *Id.* Therefore, the trial court's findings constitute a finding that appellants committed a wrongful act by violating the ordinance. Because the City sought the civil remedy of an injunction, the trial court was not required to determine whether the appellants' conduct was illegal.

In several related complaints, appellants challenge the scope and breath of the injunction. Appellants assert the injunction acts as a prior restraint on future expressive conduct because the injunction forbids "nude" dance prior to any performance protected by the exception contained in the ordinance. Appellants also assert the injunction improperly fails to include the exception contained in section 21-207(c)(1). Appellants argue the trial court had to, but did not, find that the exception contained in section 21-207 of the ordinance did not apply. Appellants also contend the injunction improperly eliminates the scienter requirement contained in section 21-205. According to appellants, not including the "intentionally" and "knowingly" language of

section 21-205, and instead, restraining appellants from "allowing" nudity is vague and subject to more than one interpretation.

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained . . . ." TEX. R. CIV. P. 683. An injunction must be as definite, clear, and precise as possible and, when practicable, it should inform the defendant of the acts he is restrained from doing without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further trial. *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 384 (Tex. App.— Dallas 2009, no pet.).

An injunction should be broad enough to prevent a repetition of the wrong sought to be corrected. *Id.* But, it must not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights. *Id.* Where a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint. *Id.* Thus, the entry of an injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Id.*

The trial court's final judgment contains the following finding:

> The City of San Antonio . . . enacted Sections 21-205(c) and (e) of the City Code, a zoning ordinance that makes it unlawful for entities that manage, own or operate Human Display Establishments to intentionally or knowingly allow individuals to appear on the premises in a state of nudity. [Appellants] intentionally and knowingly permit individuals to appear in a state of nudity.

The trial court's final judgment then enjoins appellants

> and their respective agents, servants, employees, representatives, contractors, and those in active concert or participation with it or them are restrained from violating Article IX, Section 21-205 (a), (c), and (e) of the City of San Antonio Code of Ordinances [specifically restrained from *allowing*

individuals to appear in a state of nudity at d/b/a The Players Club a/k/a Paradise Gentlemen's Club and RCI Entertainment (San Antonio), Inc. d/b/a XTC Cabaret].  (Emphasis added.)

The judgment provides that the restraint is binding on RCI and Players "and upon those persons described in Section 21-205(c) and (e) in active concert or participation with it or them who receive actual notice of the order by personal service or otherwise."

The judgment thus specifically states that the ordinance "makes it unlawful for entities that manage, own or operate Human Display Establishments to *intentionally or knowingly* allow individuals to appear on the premises in a state of nudity."  (Emphasis added.)  The decretal paragraph specifically enjoins appellants "from violating Article IX, Section 21-205 (a), (c), and (e) of the City of San Antonio Code of Ordinances."  The complained-of language is additional language contained in a parenthetical.  We conclude the use of knowingly in a parenthetical does not render the injunction vague.

However, we believe that because the injunction restrains all appearances in a state of nudity, the injunction does not, as definitely, clearly, and precisely as possible, inform appellants of the acts they are restrained from doing without calling on appellants for inferences or conclusions about which persons might well differ and without leaving anything for further trial. Although we do not believe the trial court was required to find that the exception did not apply, we agree with appellants that the injunction as worded has the potential to act as a prior restraint on "persons engaged in expressing a matter of serious literary, artistic, scientific, political, or social value."  SAN ANTONIO, TEX., CODE § 21-207(c)(1).  Because the injunction does not include the exception contained in the ordinance, the injunction too broadly enjoins appellants from activities that are lawful and proper under the ordinance.

Finally, appellants contend the injunction violates Texas Rule of Civil Procedure 683, which provides that every order granting an injunction and every restraining order "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." TEX. R. CIV. P. 683. Appellants specifically complain the injunction too broadly sweeps within its scope "representatives and contractors" because those persons are not specifically listed in Rule 683. We agree that the inclusion of "representatives and contractors" renders the scope of the injunction overly broad. *See Metra United Escalante, L.P. v. Lynd Co.*, 158 S.W.3d 535, 544 (Tex. App.—San Antonio 2004, no pet.) (holding injunction overbroad because it included italicized parties: "It is further Ordered that the Metra United Property Owners, their agents, *successors, substitutes, assigns, partners, representatives,* servants, employees, attorneys and *any other persons or entities in active concert or participation with the Metra United Defendants* (or with notice of this Order or the restrictions imposed by this Order) are hereby restrained from hindering . . . .").

## CONCLUSION

Because the trial court's order is overly broad with regard to the scope of the persons included and because the injunction operates as a prior restraint on persons "engaged in expressing a matter of serious literary, artistic, scientific, political, or social value," we reverse the permanent injunction in part and remand the cause to the trial court with instructions to modify the scope of the injunction order consistent with this opinion. We affirm the judgment in all other respects.

Sandee Bryan Marion, Justice