

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00219-CV

**IN THE ESTATE OF RENE HURON**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2022-PC-00794
Honorable Veronica Vasquez, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Luz Elena D. Chapa, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: February 15, 2023

AFFIRMED

In this interlocutory appeal, Adam Huron III challenges a temporary injunction in favor of appellees Xena Borrego, Individually and as Administrator of the Estate of Rene Huron, Deceased; Dominique Huron; and Selena Huron. The temporary injunction restrains Adam III from interfering with the operation of Adam's Mexican Food Products – Mgmt, LLC (AMFP), a closely held limited liability company. We affirm.

### BACKGROUND

Adam Huron, Jr. owned AMFP. In 2016, he incorporated AMFP as a limited liability company. He also executed a company agreement naming his sons, Rene and Adam III, as its managers. Rene worked full time at AMFP; Adam III, a project manager for an electric company, did electrical work for AMFP but otherwise did not work there. However, in 2018, Adam III began

drawing a salary from AMFP. When Adam, Jr. died in 2020, he left the company to Adam III (45%), Rene (45%), and long-term employee Carmen Paredes (10%). Adam III and Rene's interests were voting interests; Carmen's interest was not. After Adam, Jr.'s death, conflict arose over Adam III's salary and in negotiations for Adam III to sell Rene his 45% interest.

Rene died intestate in February of 2022, survived by his daughters Xena, Dominique, and Selena (collectively, the heirs). During his life, each daughter had pitched in when Rene needed help running AMFP. After Rene's death, Adam III claimed that under the transfer restrictions in the company agreement, Rene's membership interest did not pass to the heirs. He concluded that, as the only remaining manager and member, he had sole authority over the company's operations. The heirs perceived Adam III's control over AMFP's operations as disruptive to the company.

On March 4, 2022, Xena, individually and as administrator of Rene's estate, Dominique, and Selena (collectively, the plaintiffs) sued Adam III, both directly and derivatively on behalf of AMFP. The plaintiffs asserted claims for breach of contract, breach of fiduciary duty, and conversion, and they requested a declaratory judgment invalidating the transfer restrictions in the company agreement. They sought injunctive relief to prevent Adam III from interfering with the company. They alleged he drew an "unfair" salary that jeopardized AMFP's cash flow, announced that he was now in charge and the heirs would have no part in running the company, manipulated Carmen, made unilateral personnel changes, and used his nephew to obtain confidential information. They also alleged that he was on the verge of changing passwords to the company's computer system, which would prevent employees from doing their jobs.

On March 9, 2022, the trial court signed a temporary restraining order enjoining Adam III from, inter alia, transferring funds from AMFP accounts, disrupting its normal operations, and preventing employees from accessing its premises and computer systems. Around the same time, Adam III changed permissions at AMFP's bank and payroll company, bringing AMFP's

bookkeeping to a standstill. The following day, Xena (asserting Rene's 45% interest) and Carmen (asserting her own 10% interest) removed Adam III as manager and appointed Xena and Martha Gonzalez, AMFP's controller, as managers. On March 16, Adam III filed an Original Answer, Special Exceptions, Counter Claim and Response to the Request for a Temporary Restraining Order.

The trial court held a three-day hearing on the plaintiffs' request to convert the TRO into a temporary injunction. Several witnesses testified to support the plaintiffs' allegations. In contrast, Adam III testified that under the company agreement, he is the only manager and the heirs have no membership interest in the company, so he alone could set his salary. He reasoned that under the company agreement, Xena had no right to vote Rene's interest and Carmen had no right to vote her interest. He asserted that the heirs "should not be in there trying to run the business when they have no business in there." He also testified that many of the prior witnesses had testified deceptively, blaming him for disruptions the heirs actually caused. He also stated that he intended to fire controller Gonzalez "because she is not a good ally for me if I get in there because she will not help me."

On April 4, 2022, the trial court signed a corrected temporary injunction finding probable, imminent, and irreparable harm would occur if Adam III's unlawful actions continued. The trial court prohibited Adam III from, inter alia: transferring funds out of any AMFP accounts; managing AMFP in any way; removing or appointing any management-level employees; giving salary increases or bonuses to anyone; or accessing Rene's emails. After the plaintiffs filed a temporary injunction bond, Adam III filed a notice of appeal. He argues the trial court lacked subject matter jurisdiction, erred in granting the temporary injunction, and erred in drafting the injunction order. He asks this court to dissolve the temporary injunction and forfeit the bond the plaintiffs posted.

**ANALYSIS**

***Standing***

In his first argument on appeal, Adam III argues the trial court lacked subject matter jurisdiction.

*Applicable Law and Standard of Review*

"Constitutional standing is a prerequisite for subject matter jurisdiction." *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 566 (Tex. 2021). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015) (internal quotation marks omitted). It "requires a concrete injury that is both traceable to the defendant's conduct and redressable by court order." *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 567. "[A] challenge to standing turns on the plaintiff's claimed injury: whether the alleged injury is both concrete and particularized and actual or imminent, not conjectural or hypothetical; whether the alleged injury is fairly traceable to the defendant's challenged action; and whether it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021). The threshold inquiry into standing does not depend on the merits of the plaintiff's substantive claims. *Id*. at 696. Courts review constitutional standing de novo. *Sneed*, 465 S.W.3d 180.

*Application*

We conclude that Xena's assertion, in her capacity as the administrator of Rene's estate, that the estate will suffer economic harm from Adam III's challenged actions sufficiently alleges the concrete actual injury required for standing. *Data Foundry Inc.*, 620 S.W.3d at 700. The alleged injury—economic injury to AMFP—is fairly traceable to Adam III's challenged actions, and it is likely that the injury alleged would be redressed by a favorable decision. *Data Foundry, Inc.*, 620

S.W.3d at 700. Rene, as "a partner or other stakeholder in a business organization[,] ha[d] constitutional standing to sue for an alleged loss in the value of [his] interest in the organization." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 778 (Tex. 2020). As administrator of Rene's estate, Xena stands in Rene's shoes. *Ferreira v. Butler*, 575 S.W.3d 331, 334 (Tex. 2019); TEX. EST. CODE ANN. § 351.001. In that capacity, Xena has constitutional standing to sue for, at a minimum, an alleged loss in the value of the estate's interest in the company. We overrule Adam III's standing argument as to Xena in her capacity as the administrator of Rene's estate.

We also conclude that the heirs' assertion that the monetary value of their interests in the estate will suffer harm from Adam III's challenged actions sufficiently alleges the concrete actual injury required for the heirs' standing. *Data Foundry Inc.*, 620 S.W.3d at 700. Whatever Rene owned at his death immediately vested in his heirs at law—Xena, Dominique, and Selena. TEX. EST. CODE ANN. § 101.001. Rene owned 45% of AMFP at the time of his death. Upon his death, that interest transferred to his heirs. *Cf. Tex. P.M.R., Inc. v. Ripley*, No. 04-19-00229-CV, 2019 WL 6887718, at *5 (Tex. App.—San Antonio Dec. 18, 2019, no pet.) (mem. op.). Adam III argues the heirs lack standing because they have no membership rights under the company agreement. *See* TEX. BUS. ORGS. CODE ANN. §§ 101.452, 101.463. But that argument depends on the merits of the heirs' contention that they inherited Rene's membership interest itself, not just the value of that interest. The Texas Supreme Court has "discouraged the use of the term standing to describe extra-constitutional restrictions on the right of a particular plaintiff to bring a particular lawsuit." *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 567. The "statutory provisions that define and limit a stakeholder's ability to recover certain measures of damages, which protect the organization's status as a separate and independent entity . . . go to the merits of the claim and do not strip a court of subject-matter jurisdiction." *Pike*, 610 S.W.3d at 778. We therefore also overrule Adam III's standing argument as to the heirs.

***Temporary Injunction***

Next, Adam III argues that the trial court erred in granting the temporary injunction.

*Applicable Law and Standard of Review*

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002). Status quo is defined as "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transp. Co. of Tex. v. Robertson Transps., Inc*., 261 S.W.2d 549, 553–54 (Tex. 1953) (internal quotation marks omitted). "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru*, 84 S.W.3d at 204. "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id*. "An applicant for injunction must establish its probable right to recovery and a probable injury by competent evidence adduced at a hearing." *Ron v. Ron*, 604 S.W.3d 559, 568 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Goldthorn v. Goldthorn*, 242 S.W.3d 797, 798 (Tex. App.—San Antonio 2007, no pet.). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.

In an interlocutory appeal from a temporary injunction, the merits of the movant's case are not presented for the appellate court's review. *Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978). "Instead, to show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it, meaning that [t]he evidence must be sufficient to raise a bona fide issue as to the applicant's right to ultimate relief." *Regal Ent. Grp. v. iPic-Gold Class Ent., LLC*, 507 S.W.3d 337, 345 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (internal quotation marks omitted, alteration in original). The evidence need only raise a bona fide issue as

to the movant's right to relief on one of its causes of action. *Fuentes v. Union de Pasteurizadores de Juarez Sociedad Anonima de Capital Variable*, 527 S.W.3d 492, 499 (Tex. App.—El Paso 2017, no pet.).

Appellate review is strictly limited to evaluating whether there has been a clear abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). "An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis*, 571 S.W.2d at 862. When no findings of fact or conclusions of law are requested or filed, we must uphold the trial court's judgment on any legal theory supported by the record. *Id.*

*Application*

1.      *A cause of action against the defendant.*

The heirs and Xena, as administrator of Rene's estate, sued Adam III for breach of fiduciary duty on behalf of AMFP. "The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) the defendant's breach of the fiduciary duties arising from that relationship; and (3) injury to the plaintiff, or benefit to the defendant, resulting from that breach." *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied) (internal quotation marks omitted). The plaintiffs assert that Adam III owed AMFP fiduciary duties, breached those duties by putting his "personal interests and greed ahead" of AMFP's interests, and threatened AMFP's business operations. These pleadings, "liberally construed in favor of the pleader," provided Adam III with fair and adequate notice of the nature of the cause of action asserted against him. *L.D. Brinkman Inv. Corp. v. Brinkman*, No. 04-16-00651-CV, 2017 WL 1684836, at *6 (Tex. App.—San Antonio Apr. 26, 2017, no pet.) (mem. op.).

**Fiduciary Duty**. The company agreement of a limited liability company generally governs: "(1) the relations among members, managers, and officers of the company, assignees of

membership interests in the company, and the company itself; and (2) other internal affairs of the company." TEX. BUS. ORGS. CODE ANN. § 101.052(a). The agreement "may expand or restrict any duties, including fiduciary duties, and related liabilities that a member, manager, officer, or other person has to the company or to a member or manager of the company." TEX. BUS. ORGS. CODE ANN. § 101.401. Paragraph 4.2 of the company agreement sets out the existence of a fiduciary duty, requiring managers to carry out their duties "in a manner that is in the best interest of the Company. . . ." As described above, the plaintiffs pled and presented evidence sufficient to raise a bona fide issue regarding the existence of Adam III's fiduciary duty to AMFP. *Cf. Straehla*, 619 S.W.3d at 805.

**Breach Causing Damages.** The record also establishes that the plaintiffs pled and presented sufficient evidence to raise a bona fide issue regarding whether Adam III breached his fiduciary duties to AMFP and injured the company. Adam III's alleged breach began before—and continued in the immediate aftermath of—Rene's death. The trial court heard evidence that Adam III's $5,000 monthly salary threatened AMFP's financial fitness. Although Adam III did not work there full time, AMFP began paying him a salary starting in 2018. Over the years, Adam III negotiated raises with Rene. His monthly salary rose from $1,100 to $1,700 in 2019, and then to $2,500 in 2021. When Adam III sought a raise to $5,000, Rene objected. Adam III was removed from AMFP's payroll in December of 2021. In January 2022, Adam III transferred $5,000 from AMFP's account to his own. Adam III testified the company agreement entitles him to a salary of his choosing, but the trial court heard evidence that AMFP could not pay him that salary without harming the company because of its low yearly net profits. Gonzalez, the controller, testified that Adam III's salary prevented the company from filling some needed positions. Further, the trial court heard that the company evaluator deemed Adam III's salary an "issue," that the salary

constituted a distribution not contemplated in the company agreement, and that under the company agreement, Rene and Carmen were entitled to proportional distributions they had not received.

The trial court also heard evidence that on March 11, 2022, Gonzalez received an email from AMFP's payroll company, ADP, stating the permissions on AMFP's payroll account had been changed. Her authority to use ADP was removed, and Adam III was added as a user. She tried to fix the issue, but ADP representatives stated they could no longer talk to her because she was no longer authorized and requested a court order before reinstating Gonzalez's permissions. As a result, she and the heirs paid company payroll out of their own pockets.

Adam III also delivered a resolution to AMFP's bank that caused the bank to partially freeze the accounts. A bank representative testified that the resolution changed the signatory on the account. As a result, "the accounts were restricted, which means they can only accept deposits, and every debit that comes out of the account is examined." Some checks were not honored. Without access, Gonzalez could not run commissions or determine what invoices had been paid. Gonzalez "went from being able to manage to being completely blind in that capacity." Although Adam III testified his only goal in filing the resolution was to prevent fraud, the filing caused disruption.

The trial court also heard evidence that when Carmen told Adam III she would not go back to court to recant her testimony that the heirs were running the company "very well," Adam III reacted in a manner that left her in tears and frightened.

We conclude the plaintiffs pled and presented some evidence that tends to sustain the claim that Adam III breached his fiduciary duty to AMFP, injuring it. *Cf. id*. at 805–09.

2.      *A probable right to the relief sought.*

Next, Adam III argues the plaintiffs have no probable right to the relief sought because under the transfer restrictions in the company agreement, the heirs could not be assignees of Rene's

membership interest. According to Adam IIII, the company agreement lawfully contracts around the sections of the Texas Business Organizations Code that would deem the heirs the assignees of Rene's membership interest with the capacity to file a derivative suit. *See* TEX. BUS. ORGS. CODE ANN. § 101.052(c) (allowing, with some exceptions, LLC to waive or modify Business Organizations Code provisions in a company agreement); *see also* TEX. BUS. ORGS. CODE ANN. §§ 101.1115(a)(2), 101.451(3), 101.463 (when pieced together, providing that on death of member of closely held LLC, member's heirs are assignees of membership interest authorized to file derivative suit). The plaintiffs seek a declaratory judgment that the transfer restrictions in the company agreement runs afoul of the Business Organizations Code and section 101.001(b) of the Estates Code. *See* TEX. EST. CODE ANN. § 101.001(b).

But our scope of review is limited to the validity of the order granting temporary injunctive relief. The ultimate merits of the plaintiffs' case are not presented for our review. *Davis*, 571 S.W.2d at 861. The transfer restrictions—valid or not—do not speak to an administrator's right to protect an estate. Xena stands in the shoes of Rene, and Rene, as a member, could have brought a derivative action on behalf of AMFP. TEX. BUS. ORGS. CODE § 101.463 (allowing member of closely held LLC to bring derivative suit free of statutory standing, demand, and mandatory-dismissal requirements; affording courts discretion to treat such suits as direct actions brought by member for member's own benefit and to order recovery paid directly to plaintiff or LLC if necessary to protect creditors or other LLC members). The plaintiffs pled and presented sufficient evidence to raise a bona fide issue of a probable right to the relief sought. *Ron*, 604 S.W.3d at 568; *Goldthorn*, 242 S.W.3d at 798.

3.    *A probable, imminent, and irreparable injury if the status quo is not preserved.*

Adam III insists that the status quo was that he drew a salary of $5,000 per month and that he alone controlled the company. But, as pointed out above, the trial court also heard evidence that

the status quo immediately preceding this controversy was that AMFP was running well with Rene, and then the heirs, at the helm, and with Adam III no longer on payroll. *Butnaru*, 84 S.W.3d at 204; *Transp. Co. of Tex.*, 261 S.W.2d at 553–54. Moreover, the trial court heard that AMFP could not pay Adam III a $5,000 monthly salary without harming the company.

A temporary injunction is an appropriate remedy where the potential economic loss is so great as to threaten a movant's business operations. *See Occidental Chem. Corp. v. ETC NGL Transp., LLC*, 425 S.W.3d 354, 364 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *see also Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989) (collecting cases holding threat to business viability is irreparable harm). The parties dispute whether Rene's membership interests passed to the heirs. That question is important in determining some of the issues in this case but given the evidence of a probable right to recovery on at least one ground, the trial court acted within its discretion in granting the injunction and reserving "difficult questions of law and fact for full development at trial." *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex. App.—Houston [14th Dist.] 1991, no writ). The temporary injunctive relief preserves the issue on the validity of the transfer restrictions for a proceeding on the merits while protecting the value of Rene's estate in the meantime. The trial court did not abuse its discretion in concluding that the plaintiffs made a bona fide showing of a probable, imminent, and irreparable injury if the status quo is not preserved. We overrule Adam III's argument to the contrary.

### *The Written Order*

Finally, Adam III argues the trial court's order fails to comply with Rule 683 and is overbroad.

*Applicable Law and Standard of Review*

A temporary injunction order entered by the trial court must comply with Rule 683 of the Texas Rules of Civil Procedure. Under Rule 683, "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the act or acts sought to be restrained." TEX. R. CIV. P. 683. A restraining order "must not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights." *RCI Ent. (San Antonio), Inc. v. City of San Antonio*, 373 S.W.3d 589, 603 (Tex. App.—San Antonio 2012, no pet.). "A trial court abuses its discretion by issuing a temporary injunction order that does not comply with the requirements of rule 683." *Indep. Cap. Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.).

*Application*

Adam III contends that the injunction must be dissolved because the trial court failed to state the reasons for its issuance as required by Rule 683. But the trial court did state the reasons:

> The Court finds that Plaintiffs will be irreparably injured should Defendant Adam Huron III's unlawful actions continue because Plaintiffs' interest in [AMFP] will be impaired and damaged. AMFP will not have sufficient cash to operate; Adam Huron III's attempts to remove key employees in the wake of Rene Huron's death will destroy AMFP's continuity of leadership and customer relationships. There is also a risk that Adam Huron III will obtain privileged and confidential attorney-client communications between Rene Huron and his attorneys. In addition, such actions will breach and repudiate the provisions of the LLC Agreement. This is damaging, and will continue to damage AMFP's business operations, and has a significant chance of destroying the business completely.

The order therefore complied with Rule 683. *See* TEX. R. CIV. P. 683.

Adam III also asserts that the order deprives him of his rights as a member or manager of AMFP. But Adam III's rights as a member or manager of AMFP as set out in the company agreement are subject to his duties defined by that agreement. The trial court heard evidence that Adam III exercised his rights in contravention of his duties and threatened irreparable injury to

AMFP. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.011. Under the evidence before it, the trial court did not abuse its discretion in ordering an injunction broad enough to protect AMFP until Rene's estate can be administered. *RCI Ent.*, 373 S.W.3d at 603. We overrule Adam III's complaints about the wording of the injunction order.

## CONCLUSION

Because sufficient evidence reasonably supports that the plaintiffs pleaded and proved: (1) a cause of action against Adam III; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim, the trial court did not abuse its discretion in granting the injunction. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 58; *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017). We overrule Adam III's request to dissolve the injunction and forfeit the plaintiffs' bond. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990). We affirm the trial court's April 4, 2022 Corrected Temporary Injunction and Order Setting Case for Trial.

Beth Watkins, Justice