

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00341-CV

**SANTANDER CONSUMER USA, INC.** d/b/a Chrysler Capital,
Appellant

v.

**CITY OF SAN ANTONIO**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-01960
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: December 30, 2020

AFFIRMED

Santander Consumer USA, Inc. d/b/a Chrysler Capital sued the City of San Antonio after

it impounded and sold vehicles in which Santander held a security interest.  Santander alleged the

City's sale of the vehicles amounted to a taking without adequate compensation.  Santander also

challenged the validity of a related city ordinance and asserted a claim for money had and received.

The City filed a plea to the jurisdiction, asserting it was immune from Santander's claims.  The

trial court granted the City's plea, and Santander appeals.  We affirm the trial court's order.

**BACKGROUND**

In San Antonio, when a vehicle is abandoned, towed from a collision site, or seized in connection with criminal activity, the City stores that vehicle at a lot it owns and uses solely for storage of vehicles impounded by the City's police department.

**A.      Notice to Owners**

When the City tows a vehicle to the impound lot, it sends notice of the impoundment to the vehicle's owner and to any lienholder whose security interest is documented on the vehicle's title. If neither the owner nor the lienholder retrieves the vehicle after the first notice, the City then sends a "Law Enforcement Abandonment Notice" which states the vehicle will be disposed of if it is not reclaimed within twenty days.  The record shows the City typically sends the first notice when it has had possession of the vehicle for two days and sends the "Law Enforcement Abandonment Notice" ten days after the first notice.  It is undisputed that the City sent, and Santander received, the notices described above for each vehicle at issue in this case before those vehicles were sold.

**B.      Conditions to Recover Vehicle**

Under Texas state law and city ordinances, an owner or lienholder must pay certain fees to recover an impounded vehicle.  TEX. TRANSP. CODE ANN. § 683.013; SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 19, §§ 19-52, 19-53, 19-53.1, 19-54(a) (2008).  Additionally, section 19-54(a)(3) provides that a lienholder seeking to repossess a vehicle from the City's impound lot must demonstrate that the note on the vehicle is delinquent by at least thirty days.  SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 19, § 19-54(a)(3) (2008).  Santander alleges that it attempted to recover the vehicles at issue here by tendering the required fees, but the City refused to release them because Santander did not provide evidence of delinquency.  Because neither the owners nor Santander retrieved the vehicles, the City auctioned some of them to private parties and sold others to the San Antonio Police Department for use in law enforcement.

## C.     Disposition of Vehicles, Proceeds

The City sold the vehicles at issue here between January 9, 2019, and July 10, 2019. Texas law provides that after such a sale, the City may reimburse itself for certain costs and must then hold the remainder—which the parties call "excess proceeds"—for ninety days for the owner or lienholder. *See* TEX. TRANSP. CODE ANN. § 683.015(a), (b). If the excess proceeds are not claimed within ninety days, the City must deposit the funds into an account that may be used to pay costs related to impounding and auctioning other vehicles. *Id.* § 683.015(c). The City may also transfer funds exceeding $1,000 from that account to its general revenue fund to be used for law enforcement purposes. *Id.* § 683.015(d). It is undisputed that the City did not remit any excess proceeds from the relevant sales to Santander.

## D.     Santander Sues

On January 30, 2019, Santander filed the first of several lawsuits arising out of the City's impoundment of the vehicles. It also obtained ex parte writs of sequestration in connection with each lawsuit. Santander's initial pleadings alleged conversion claims and sought to foreclose on its security interest in the vehicles, and it later added a claim for money had and received.

The City contends it was not served with Santander's lawsuit until June of 2019, after a number of the vehicles in question had already been sold. In its original answer to the petition with which it was served, the City asserted Santander's allegations "fail to allege a waiver of governmental immunity from suit." On August 8, 2019, Santander's attorney sent an e-mail to the City's attorney requesting "an accounting and the excess proceeds" associated with a list of vehicles in which Santander claimed an interest. On November 7, 2019, the trial court signed an order consolidating Santander's lawsuits.

**E.      City's Plea to the Jurisdiction**

The City filed a plea to the jurisdiction arguing that it was immune from Santander's foreclosure, conversion, and money had and received claims.

**F.      Santander's Amended Petition**

On February 13, 2020, Santander amended its petition to drop its foreclosure and conversion claims against the City, reiterate its claim for money had and received, and add a claim that the City's disposal of the vehicles constituted a taking without adequate compensation.  In its amended petition, Santander included a list of vehicles in which it claimed a security interest and which it alleged the City had impounded "[a]t various times."  It also sought a declaration that the ordinance requiring evidence of delinquency was unconstitutional because it conflicted with or was preempted by the Texas Transportation Code and the federal Gramm-Leach-Bliley Act.  *See* Pub. L. No. 106-102, 113 Stat. 1338 (codified as amended at, *e.g.*, 15 U.S.C. § 6802).

**G.      City's Amended Plea, Santander's Response**

The City amended its plea to the jurisdiction to address Santander's new claims.  As support for its response to the City's plea, Santander provided an affidavit from its assistant vice president of replevins which stated "Santander refused to provide" the evidence required by the City's ordinance because "doing so would leave Santander potentially liable for a breach of the Gramm-Leach-Bliley Act for disclosing sensitive consumer financial information to third parties."  It also presented the August 8, 2019 e-mail from its attorney to the City's attorney.

After a hearing, the trial court granted the City's plea to the jurisdiction and dismissed Santander's claims against the City.  Santander appeals.

GOVERNMENTAL IMMUNITY

The doctrine of governmental immunity shields political subdivisions of the State, such as the City, from both suit and liability unless the legislature has abrogated that immunity.  *Ben Bolt-*

*Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). "If a governmental unit defendant is immune from suit, the trial court has no subject matter jurisdiction to hear the case against it, and the defendant may properly challenge the suit in a plea to the jurisdiction." *City of Leon Valley Econ. Corp. v. Little*, 422 S.W.3d 37, 41 (Tex. App.—San Antonio 2013, no pet.). We review questions of subject matter jurisdiction de novo. *City of San Antonio v. Caruso*, 350 S.W.3d 247, 249 (Tex. App.—San Antonio 2011, pet. denied).

A plea to the jurisdiction can take two forms. *City of San Antonio v. Vasquez*, 340 S.W.3d 844, 847 (Tex. App.—San Antonio 2011, no pet.).

## A.    Sufficiency of Pleadings

First, the governmental entity can challenge the sufficiency of the plaintiff's pleadings. *Id.* Under those circumstances, we must determine whether the plaintiff pleaded facts sufficient to affirmatively demonstrate the trial court's jurisdiction and establish a waiver of sovereign immunity. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019); *Caruso*, 350 S.W.3d at 249. In conducting this review, we construe the pleadings liberally in the plaintiff's favor. *Vasquez*, 340 S.W.3d at 847. "If the pleadings do not . . . affirmatively demonstrate the trial court's jurisdiction but [also] do not affirmatively [negate] jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* However, if the pleadings affirmatively negate jurisdiction, the trial court may grant the plea without giving the plaintiffs an opportunity to replead. *Id.*

## B.    Existence of Jurisdictional Facts

Second, a plea to the jurisdiction may challenge the existence of jurisdictional facts. *Id.* In evaluating a challenge to the existence of jurisdictional facts where the jurisdictional facts implicate the merits of the case, we consider the evidence in the light most favorable to the

plaintiff, indulging every reasonable inference in its favor and resolving all doubts against the governmental entity's interpretation of the evidence. *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.). If the relevant evidence does not implicate the merits of the case and is undisputed, the court rules on the plea as a matter of law. *Poindexter*, 306 S.W.3d at 807.

**SANTANDER'S TAKINGS CLAIM**

### A.      Parties' Arguments

Santander argues the trial court erred by granting the City's plea to the jurisdiction on its takings claim because the Texas Constitution waives sovereign immunity for takings claims. It argues the City committed a taking by (1) refusing to release the vehicles when Santander tendered the required fees; and (2) after selling the vehicles in question, failing to remit the excess proceeds associated with those vehicles to Santander.

The City responds that the Texas Supreme Court's opinion in *City of Dallas v. VSC, LLC*, 347 S.W.3d 231 (Tex. 2011) mandates the dismissal of Santander's takings claim because Santander did not timely follow the procedures necessary to either regain possession of the vehicles or to obtain any excess proceeds.

### B.      *City of Dallas v. VSC, LLC*

As *VSC* explained, "[t]he [Texas C]onstitution waives immunity for suits brought under the Takings Clause, but this does not mean that a constitutional suit may be brought in every instance." *Id.* at 236 (footnote omitted). *VSC* further noted that neither the federal nor Texas constitutions "proscribe the taking of property, [they] proscribe[] taking without just compensation." *Id.* (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162 (2019)).

Based on these general principles, the court concluded that when a compensatory remedy exists for a regulatory taking, that remedy will bar any constitutional claim arising out of the taking "so long as those methods comply with due process and other constitutional requirements." *Id.* If a compensatory remedy is available, a party whose rights are affected by a governmental seizure of property must "utilize[] those procedures before a takings suit can be viable." *Id.* at 235–36. If, however, the party does not comply with the requirements of the compensatory process, "a constitutional claim is necessarily premature." *Id.* at 236.

Like this case, *VSC* involved a takings claim against a city arising out of the sale of vehicles that were seized by law enforcement. *Id.* at 233–34. The appellant, VSC, "was aware of what property was seized and by whom," but it did not comply with "a statutory remedy for the return of the property that was easily discoverable from public sources." *Id.* at 239. Instead, it filed a takings lawsuit against the City of Dallas. *Id.* at 233. Under those circumstances, the supreme court dismissed VSC's claims because "[a] party cannot claim a lack of just compensation based on its own failure to invoke a law designed to adjudicate such a claim." *Id.* at 240.

## C.    Repossession of Impounded Vehicles

Santander correctly states that "[a] lienholder is deemed to abandon its vehicle if it fails to show it holds a valid lien and pay any outstanding 'towing, preservation, and storage charges' to the impounding entity within 20 days of receiving a vehicle abandonment notice." *See* TEX. TRANSP. CODE ANN. §§ 683.012(b)(4), .014(a). Further, the City requires a lienholder seeking to repossess an impounded vehicle to show that the note on the vehicle has been delinquent for at least thirty days. SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 19, § 19-54(a)(3) (2008). While Santander claims the City's agent "did not reference" section 19-54(a)(3) and "refused to provide a reason for requesting the 30-day default notice" when it demanded evidence of delinquency, the portion of the record Santander cites for this assertion does not support it.

*1. VSC Controls*

Although Santander concedes it did not comply with section 19-54(a)(3), it does not directly address the holding in *VSC*. Instead, it asserts only that the Texas Constitution waives the City's governmental immunity for its takings claim. Under *VSC*, this assertion is without merit. *See VSC*, 347 S.W.3d at 235–36. Taken together, the applicable provisions of the Transportation Code and the City's ordinances, including section 19-54(a)(3), created a legal avenue through which Santander could have regained possession of the vehicles at the time it filed its lawsuit. *See id.* at 237. Under *VSC*, the existence of this remedial procedure and Santander's admitted failure to comply with it deprived the trial court of jurisdiction unless Santander showed section 19-54(a)(3) was constitutionally infirm. *See id.* at 236.

*2. Constitutional Challenge*

To the extent Santander challenges section 19-54(a)(3)'s constitutionality,[1] we must determine whether it identified any "due process [or] other constitutional requirements" that are violated by section 19-54(a)(3)'s requirements. *See id.*

    a.    <u>Section Presumed Valid</u>

To begin, we must presume section 19-54(a)(3) is valid, and Santander has the burden to show it is not. *RCI Entm't (San Antonio), Inc. v. City of San Antonio*, 373 S.W.3d 589, 595 (Tex. App.—San Antonio 2012, no pet.). As a home-rule city, the City enjoys broad discretionary powers, so long as its ordinances are consistent with the state constitution and general laws enacted by the legislature. *See Dall. Merchant's & Concessionaire's Ass'n v. City of Dall.*, 852 S.W.2d 489, 490–91 (Tex. 1993); *RCI Entm't*, 373 S.W.3d at 595.

---

[1] Santander's brief limits its arguments about the constitutionality of section 19-54(a)(3) to its declaratory judgment claim and does not specifically tie those arguments to its takings claim. However, because "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included," we will consider those arguments in determining whether the trial court had jurisdiction over Santander's takings claim. TEX. R. APP. P. 38.1(f).

b.    Discerning Preemption

Santander does not cite any provision of the state constitution that it contends conflicts with section 19-54(a)(3).  While Santander contends section 19-54(a)(3) is preempted by sections 683.012 and 683.014(a) of the Transportation Code, "the mere fact that the legislature has enacted a law addressing a subject does not mean the complete subject matter is completely preempted." *Dall. Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 491; *accord RCI Entm't*, 373 S.W.3d at 595.  If the state law and section 19-54(a)(3) do not conflict, then section 19-54(a)(3) is not void. *See RCI Entm't*, 373 S.W.3d at 595.  Moreover, we cannot "hold a state law and a city ordinance repugnant to each other if [we] can reach a reasonable construction leaving both in effect." *Id.* at 595–96.  Finally, "[i]f the Legislature decides to preempt a subject matter normally within a home-rule city's broad powers, it must do so with 'unmistakable clarity.'" *Id.* at 595 (quoting *Dall. Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 491).

c.    No State Law Conflicts

Santander has not cited any authority showing that the applicable provisions of the Transportation Code and section 19-54(a)(3) cannot be construed in harmony with one another. *See id.* at 595–96.

While the Transportation Code requires an impounding municipality to notify owners and lienholders "of the right to claim" an impounded vehicle "not later than the 20th day after the date of notice on payment of" certain fees, *see* TEX. TRANSP. CODE ANN. § 683.012(b)(4), section 19-54(a)(3) ensures a lienholder cannot exercise that right unless it shows it is entitled to possession of the vehicle. *Cf. Comerica Acceptance Corp. v. Dall. Cent. Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex. App.—Dallas 2001, pet. denied) (noting lienholders ordinarily have no right to possession of collateral unless the owner defaults).  Nothing in the Transportation Code's plain language expressly prohibits home-rule cities from requiring a lienholder to show it is entitled to possession

- 9 -

of the vehicle. *See* TEX. TRANSP. CODE ANN. § 683.012(b)(4). Santander's insistence that "[s]tate law is silent as to" any requirements beyond the payment of specified fees does not, as Santander implies, show that the legislature intended to preempt the City's exercise of authority in this area; to the contrary, the Transportation Code's silence supports a conclusion that the legislature did not preempt that subject matter with unmistakable clarity. *See RCI Entm't*, 373 S.W.3d at 595. Because Santander has not shown section 19-54(a)(3) is inconsistent with the Transportation Code, we reject its assertion that any purported conflict excuses its failure to comply with the ordinance's requirements. *See id.*; *see also VSC*, 347 S.W.3d at 240.

### d. No Federal Law Conflicts

Santander also argues section 19-54(a)(3) is inconsistent with the federal Gramm-Leach-Bliley Act. *See* Pub. L. No. 106-102, 113 Stat. 1338 (codified as amended at, *e.g.*, 15 U.S.C. § 6802(a)). Santander contends section 19-54(a)(3) required it to divulge its customers' delinquencies in violation of the Act's prohibition on the disclosure of "nonpublic personal information" to third parties. *Compare id.*, *with* SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 19, § 19-54(a)(3) (2008). However, as the City notes, the Act contains an exception that explicitly allows the disclosure of nonpublic personal information "to comply with Federal, State, or local laws, rules, and other applicable legal requirements." *See* 15 U.S.C. § 6802(e)(8). Santander does not explain how its claimed conflict survives the application of this exception. As a result, we reject its assertion that the Act excuses its failure to comply with section 19-54(a)(3). *See id.*; *see also VSC*, 347 S.W.3d at 240.

### 3. *Pleadings Negate Jurisdiction*

Although Santander tendered payment of the fees required by both the City's ordinances and the Texas Transportation Code, its own pleadings and evidence show that it "refused to provide" documentation regarding the owners' delinquency. *See* SAN ANTONIO, TEX., CODE OF

ORDINANCES ch. 19, § 19-54(a)(3) (2008). Because Santander's pleadings show it did not follow the applicable procedures to recover possession of the vehicles before it filed its lawsuit, those pleadings affirmatively negate the trial court's jurisdiction over a takings claim arising out of the City's refusal to release the vehicles. *See VSC*, 347 S.W.3d at 240; *Vasquez*, 340 S.W.3d at 847. As a result, the trial court did not err by granting the City's plea to the jurisdiction as to that portion of Santander's takings claim.

**D.     Recovery of Excess Proceeds**

With regard to Santander's claim that the City failed to pay excess proceeds associated with vehicles that had been sold, the parties agree the applicable procedure required Santander to request those proceeds within ninety days of the date the vehicles were sold. *See* TEX. TRANSP. CODE ANN. § 683.015(b). As support for its assertion that the City received "timely actual notice of Santander's claims . . . that is sufficient to trigger the City's duty to provide excess proceeds," Santander points to the August 8, 2019 e-mail from its attorney to the City's attorney.

The record shows the City began selling the vehicles in which Santander claimed an interest on January 9, 2019. At that point, Santander could have requested the excess proceeds arising out of those sales, but it did not. *See id.* Instead, it sued the City on January 30, 2019, and it did not explicitly request the distribution of excess proceeds until August 8, 2019. Santander's live petition did not affirmatively demonstrate that this request was timely as to any of the vehicles at issue. *See Caruso*, 350 S.W.3d at 249. Moreover, its response to the City's plea to the jurisdiction—which response did not address the supreme court's holding in *VSC*—argued only that the August 8, 2019 request was sufficient to notify the City of Santander's interest in all the vehicles, including those that were unquestionably sold more than ninety days before August 8, 2019. Because Santander did not show it timely complied with the applicable procedure to recover

excess proceeds, the trial court did not err by granting the City's plea to the jurisdiction. *See VSC*, 347 S.W.3d at 240.

Given that Santander's pleadings affirmatively negate the trial court's jurisdiction over its takings claim, we overrule its first issue. *See Vasquez*, 340 S.W.3d at 847.

S<span style="font-variant: small-caps;">ANTANDER</span>'<span style="font-variant: small-caps;">S</span> D<span style="font-variant: small-caps;">ECLARATORY</span> J<span style="font-variant: small-caps;">UDGMENT</span> C<span style="font-variant: small-caps;">LAIM</span>

**A.      Parties' Arguments**

Santander contends the City is not immune from its declaratory judgment claim because the UDJA expressly waives sovereign immunity for a challenge to the validity of a municipal ordinance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009). The City responds that Santander lacks standing to challenge section 19-54(a)(3) because no justiciable controversy currently exists. We agree with the City.

**B.      UDJA**

The Uniform Declaratory Judgments Act (UDJA) provides that "[a] person . . . whose rights, status, or other legal relations are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a); *accord Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

**C.      No Justiciable Controversy**

To maintain its declaratory judgment action, Santander was required to show that "a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *accord City of Helotes v. Miller*, 243 S.W.3d 704, 708 (Tex. App.—San Antonio 2007, no pet.) ("Texas courts are not empowered to give advisory opinions."). A controversy is not justiciable unless it involves a "genuine conflict of tangible interests and not merely a theoretical

dispute." *Bonham*, 907 S.W.2d at 467. Additionally, even if a declaratory judgment would resolve a justiciable controversy between the parties, the UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction," not an independent grant of jurisdiction. *See Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (per curiam) (quoting *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994)).

Here, we have already concluded that Santander's takings claim does not fall within the trial court's jurisdiction. *See VSC*, 347 S.W.3d at 236. As a result, that claim cannot serve as a justiciable controversy to support a declaratory judgment action. *See Chenault*, 914 S.W.2d at 141; *see also VSC*, 347 S.W.3d at 236–37. Moreover, to the extent the UDJA independently waives governmental immunity for a challenge to the validity of a municipal ordinance, Santander explicitly argues that it intended its declaratory judgment claim to prevent future takings. It has not argued, either in this court or the trial court, that a declaratory judgment in its favor would resolve a tangible, existing conflict, as opposed to a hypothetical future dispute that may never occur. *See Bonham*, 907 S.W.2d at 467; *Amidei v. Presto Tierra, Ltd.*, No. 04-07-00886-CV, 2008 WL 4735589, at *1 (Tex. App.—San Antonio Oct. 29, 2008, pet. denied) (mem. op.).

Because the record does not support a conclusion that Santander's declaratory judgment claim is justiciable, the trial court did not err by dismissing it. *See Amidei*, 2008 WL 4735589, at *1. We overrule Santander's second issue.

### SANTANDER'S MONEY HAD AND RECEIVED CLAIM

Santander's only remaining cause of action is its money had and received claim. Santander argues the City lacks immunity for this claim because the City's actions in operating an impound

lot are proprietary functions to which governmental immunity does not apply.[2] Whether the City's actions were proprietary or governmental is a legal question we review de novo. *See City of El Paso v. Viel*, 523 S.W.3d 876, 883 (Tex. App.—El Paso 2017, no pet.).

## A. Immunity for Governmental Functions

The State of Texas enjoys sovereignty which "generally protects the state from suits for money damages." *Wasson Interests, Ltd. v. City of Jacksonville* (*Wasson I*), 489 S.W.3d 427, 429 (Tex. 2016). As a political subdivision of the state, the City shares in that immunity. *Id.* at 429–30.

However, because the City does not have any sovereignty distinct from the state, its immunity is generally limited to governmental acts it performs as a branch of the state and does not extend to acts it performs "in a proprietary, non-governmental capacity." *Id.* at 430. Governmental functions "are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a); *Wasson I*, 489 S.W.3d at 439. In contrast, when the City acts not "as a branch of the state, but instead 'for the private advantage and benefit of the locality and its inhabitants,'" its actions are proprietary. *See Wasson I*, 489 S.W.3d at 433 (quoting *City of Galveston v. Posnainsky*, 62 Tex. 118, 127 (1884)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b) ("[F]unctions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality [are proprietary]."). "Like *ultra vires* acts, acts performed as part of a city's proprietary function do not implicate the state's immunity for the

---

[2] While the City contends Santander has not presented any argument challenging the trial court's dismissal of its money had and received claim, Santander's brief asserts that its live petition included a claim for "money had and received for the City's proprietary acts in running an impound lot."

- 14 -

simple reason that they are not performed under the authority, or for the benefit, of the sovereign." *Wasson I*, 489 S.W.3d at 434.

## B. Functions for State

Here, neither Santander's pleadings nor the evidence it presented in response to the City's plea to the jurisdiction support a conclusion that the City's relevant actions were not "performed under the authority, or for the benefit, of" the state. *See id.*; *see also Vasquez*, 340 S.W.3d at 847. It is undisputed that the City's authority to impound and auction the vehicles arises from a statutory grant of power. *See* TEX. TRANSP. CODE ANN. §§ 683.011, .014(a)(2). Santander argues that authority is discretionary—and therefore proprietary—because the Transportation Code provides that the City "may" impound and sell abandoned vehicles but does not require it to do so. *See* TEX. TRANSP. CODE ANN. §§ 683.011, .014(a)(2); TEX. GOV'T CODE ANN. § 311.016(1) ("'May' creates discretionary authority or grants permission or a power.").

## C. Retention of Proceeds Function

However, Santander's money had and received claim is necessarily tied to the City's retention of the excess proceeds, not to the impoundment and sale of the vehicles. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) ("To prove a claim for money had and received, a plaintiff must show that a defendant holds *money* which in equity and good conscience belongs to him." (emphasis added) (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App.—Dallas 2012, no pet.))). The Transportation Code explicitly provides that the City "shall" hold excess proceeds for ninety days and deposit unclaimed excess proceeds into an account to be used by law enforcement for specific purposes. TEX. TRANSP. CODE ANN. § 683.015(b), (c); *see* TEX. GOV'T CODE ANN. § 311.016(2) ("'Shall' imposes a duty."). Because the Transportation Code expressly limits the City's discretion

regarding the excess proceeds, Santander's claim that all of the City's actions in "running an impound lot" were discretionary, and therefore proprietary, is unavailing.

**D.      Impoundment Function**

Moreover, even if we ignore the statutory limits on the City's handling of the excess proceeds and only consider its impoundment of the vehicles, section 101.0215 of the Texas Civil Practice and Remedies Code defines "police . . . protection and control" and "regulation of traffic" as governmental functions.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(1), (21); *Wasson Interests, Ltd. v. City of Jacksonville* (*Wasson II*), 559 S.W.3d 142, 147 (Tex. 2018). "[W]e have no discretion to determine that a municipality's action is proprietary if it has been designated as a governmental function" under section 101.0215.  *City of Hous. v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 33 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).  The record shows the vehicles were towed to, stored in, and eventually sold from an impound lot that is owned by the City and exclusively used by the City's police department to store vehicles that are seized in connection with a crime or arrest, abandonment, or wreck.  *See Wasson II*, 559 S.W.3d at 147 (identifying "police and fire protection" as activities "normally performed by governmental units").  While Santander contends, without citation to authority, that such impoundments are "certainly not essential" to the policing and traffic functions the legislature designated as governmental, we reject this assertion for two reasons.

*1.      Impoundment Benefits Public*

First, Santander has not shown that the towing of vehicles that are abandoned, wrecked, or involved in criminal activity is primarily performed for the benefit of the City and its inhabitants. *See Wasson I*, 489 S.W.3d at 433–34; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b). As the City notes, these actions benefit every individual who drives in the City, not just the City's residents.

2. *Function Delegated to Government*

Second, the legislature has specifically delegated the authority to remove and sell such vehicles to law enforcement agencies. *See* TEX. TRANSP. CODE ANN. §§ 683.011, .014(a)(2). While the vehicles at issue here were towed to the City's impound lot by a private contractor, Santander does not dispute that the private contractor acted on the City's behalf and pursuant to a contract with the City. Santander's assertion that these impoundments and sales could be performed by "[a]ny individual or tow company with the appropriate license" is contrary to the plain language of the Transportation Code.[3] *See* TEX. TRANSP. CODE ANN. §§ 683.011, .014(a)(2).

**E.     Function for Public Purpose**

Finally, the Texas Supreme Court has explained that "a city is deemed an agent of the state for sovereign immunity purposes when exercising its powers for a public purpose." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 n.12 (Tex. 2000) (quoting *Posnainsky*, 62 Tex. at 127); *see also Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 839–40 (Tex. 2018) (noting the Texas Supreme Court "has historically taken a function-based approach to governmental immunity").

Santander's live petition alleges that the vehicles were either sold to the San Antonio Police Department for police use or were sold to private parties with the excess proceeds deposited into an account designated for use by law enforcement. Similarly, Santander's brief asserts that the City was "legally obligated to use those [excess] proceeds for law enforcement purposes." Because Santander's own pleadings allege the City sold the vehicles and used the resulting

---

[3] The authority Santander cites for this proposition, Chapter 70 of the Texas Property Code, permits private towing, impoundment, and sale of vehicles to satisfy unpaid liens. *See* TEX. PROP. CODE ANN. § 70.006. Santander cites no authority showing that "any individual or tow company" can impound a vehicle under the provisions of the Transportation Code that are relevant here.

proceeds for public use, the trial court did not err by rejecting Santander's claims that those actions were proprietary. *See Vasquez*, 340 S.W.3d at 847.

## F. City's Actions were Governmental Functions

After reviewing the record and the applicable law, we conclude the City's challenged actions were governmental functions. As a result, the City is entitled to governmental immunity for those actions. *See Wasson I*, 489 S.W.3d at 435. Because Santander has not identified any legislative or constitutional waiver of the City's immunity for Santander's money had and received claim, Santander has not shown the trial court erred by granting the City's plea to the jurisdiction.

## G. Sufficiency of Pleadings

Because Santander failed to show the City's immunity was waived for its money had and received claim, we must consider "whether its petition is incurably defective or, whether under the facts alleged in the petition, it may be amended to allege a cause within the trial court's jurisdiction." *See Old S. Amusements, Inc. v. City of San Antonio*, No. 04-09-00466-CV, 2010 WL 2772444, at *3 (Tex. App.—San Antonio July 14, 2010, no pet.) (mem. op.). The City challenged the jurisdictional allegations in both Santander's original and first amended petitions, including the jurisdictional basis for the money had and received claim. *See Reata Const. Corp. v. City of Dall.*, 197 S.W.3d 371, 378 (Tex. 2006). In response, Santander filed its second amended petition, which added new substantive claims but did not assert any new jurisdictional bases for the money had and received claim. The City then filed its first amended plea to the jurisdiction, which specifically argued Santander "is unable to plead a valid waiver of immunity because no waiver exists for [Santander's] claim of money had and received." Santander did not make any further amendments. *See id.*

Because Santander's pleadings failed to demonstrate a waiver of immunity for the money had and received claim after multiple challenges to the jurisdictional allegations supporting that

claim, the trial court did not err by granting the City's plea to the jurisdiction without allowing Santander further opportunity to replead.  *See id.*; *Old S. Amusements*, 2010 WL 2772444, at *3. We overrule Santander's third issue.

## CONCLUSION

Having overruled each of Santander's claims, we affirm the trial court's order granting the City's plea to the jurisdiction.

Patricia O. Alvarez, Justice